2016-13-53 Committed two errors that are critical to its decision, one procedural and one substantive. I'd like to discuss both of those. Procedurally, the PTAB failed to consider the claim language in determining that the 191 patent claimed a method or corresponding apparatus for performing data processing or other operations  Well, the claim language refers to receiving data and creating data and the statute certainly refers to performing data processing used in the practice, administration or management of a financial product and the specification indicates in quite detail that this invention is used in the management of a financial product so why, and this is your point, why wasn't it properly a CBM? Well, I think there's an important distinction here and that is whether something is used, for instance, in a procedure to access a financial product or service versus something that's actually used in the management or financial product or service. What was the standard that the PTAB applied in deciding whether there is a CBM patent? I don't know that the PTAB really applied a standard here. The PTAB considered three what we view as extraneous factors. They looked at some language in the specification that refers to potential applicability for this security technology. This is not any sort of financial technology. It's a security system. It's a security technology that, according to the patent, does not care about what sort of web page it is protecting, for instance. The patent describes placing the security seal on any sort of web page and that it's the general utility type patent in that sense. But the use in banking is certainly fully set out there and the statute talks about use in a financial product. I don't think that the use even in the accused products, for instance, in this case, I don't think it's used in the practice or administration of the financial products or services. This is a security system and it's a security system on the website that when you access the bank website and you log in, it's an authentication security system. That's not part of the financial product or service. Part of our evidence of that and our argument on that, as we pointed out in the brief, is that many of the banks that were defendants in the underlying lawsuits bought the security aspect of this from RSA, who's the petitioner in the IPR we'll be talking about later, which is not a financial institution. It's a security company. These are separate modules within the systems. There's the security system to gain access and then there's the financial product or service aspect of the online system. I think an important thing to think about here is the overall question of who can perform a financial product or service and who can perform things that are not financial products or services. What I mean by that is that this court held in Versada and also applied in Sitesound the question, do only financial institutions provide financial products or services? The court said no. Clearly other institutions besides financial institutions can provide financial products or services. We're looking at the flip side of that coin today and that is does everything that a financial institution does qualify as a financial product or service or as part of the administration or management of financial product or service? I think the answer to that question has to be no. I walked into my bank last week to go deposit a check, which is part of a financial product or service and when I was walking to the front desk, someone offered me a cup of coffee. The bank was brewing coffee. That's not a financial product or service, but it's something the bank does. There are security cameras in the corner of the bank looking at people coming in and locks on the doors. If the bank installs a new security system on the doors, I would argue that's not a financial product or service and I think the same holds true with the invention that's claimed in the 191 patent. Indeed, I would think that your argument would be perhaps even broader that once we have as we have interpreted the claim language, not to be limited to financial institutions, but to anything involving sales, then the statutory construction being urged here and relied on by the board is one that would cover any operation used in a selling activity by anybody, including the gas station, including the 7-Eleven. So electricity and glass and concrete and HVAC systems and pencils, which seems a little overbroad. I think that is overbroad and that is sort of the point we're making. We mentioned the analogies in our briefs about where do you draw the line. If you're driving to the bank, is that part of the financial product or service? If you're walking through the door, if the bank is using Microsoft Word to send you a letter that's perhaps unrelated to banking, for instance. How many defendants do you have in various lawsuits? Currently pending, I think it's about 17. How many of them are financial institutions? They're all financial institutions. We were sued for declaratory judgment by a non-financial institution, which happened to provide this service to most of the financial institution defendants, which I think further supports our idea that this is not a financial invention. This is a security invention. Do you want to address the merits? Yes. The second point? Yes. So just to wrap that up, the two points on the CBM eligibility were there's a procedural defect. The board did not even consider the claim language at all. As I mentioned, it relied on Senator Schumer's statements, the statements about potential applicability and the specification, and the fact that we had sued banks. And substantively, as we've been talking just now, this is not actually a financial product or service. It's something that can access other services, including financial products or services. That, however, makes it more of a general utility patent. And the Patent Trial and Appeal Board, in the AT&T decision, which we cited in our reply brief, came to a different conclusion. First of all, they said that you have to look at the claim language. One reason for getting to the merits, I guess, would be this. If you're right about CBM and wrong about the merits, you have one claim left, Claim 24. Is that right? Right. Is that a happy place for you? No. I'm going to address that in just a moment. Okay. So turning then to the claim construction argument, the issue here surrounds the security of the preferences file. And that's the file that houses the user's authenticity stamp, the secret stamp that appears on the screen so that they know that they have authenticated to a valid site. And the primary problem with the board's decision here was that it relied almost exclusively on extrinsic evidence, dictionary definitions, rather than the specification and how that word is used in the claims. If you read the specification of the 191 patent, the word locate or location, some variation thereof, is used eight times in the patent. And we can separate those eight uses of the word into three buckets. The first of those is the use as to describe a URL, which is a uniform resource locator. That's a web address. And I'm in the CBM appendix. I'm on pages 88 and 89 of the patent. It uses that acronym column 2, line 46, and column 4, line 67. Those don't give us any guidance on how locate should be used with respect to the preferences file. The next three instances where it's used are on appendix 89, column 3, line 5. It says the user also specifies the location of the stamp. This is talking about where the user-defined stamp appears on the screen. And I should mention this second bucket of uses is describing not anything about locating where something is, but about the position on the screen for the user-defined stamp. So that was at column 3, line 5. Also on appendix page 90, column 6, lines 57 to 58, refers to a non-authenticity stamp, which can be displayed in the location where the authenticity stamp would normally be displayed. Again, the position on the screen for the stamp. And then also column 9, lines 39 to 40, that's appendix 92, the appearance and location of the authenticity stamp. Again, referring to the position of the stamp. The other three uses of locate in the patent refer to something being hidden or its location being obscured. If you look at appendix 89, it says the location of the file, that's the preferences file that we're talking about here, is not readily known. I'm sorry, column 4, line 37, on 89. So the location of the file is not readily known. Appendix 92, column 9, lines 31 to 33, this is referring to public keys. It says although the public key itself can be distributed, its storage location should remain as obscure as possible. Not in the context of the preferences file, but certainly in other use of locate where something is hidden. And then finally on appendix 92, column 9, lines 53 to 55, it says preferably the preferences file is placed in a random directory to help obscure the location of the preferences file and facilitate the creation of unique user configurations. Words like preferably are problematic, aren't they? It does say preferably on column 4, line 37, I believe it says the location of the file is not readily known. That may be a preferably also. My point is these are the only uses of this term in the specification with respect to the preferences file. Are we operating under a broadest reasonable interpretation standard here? We are, but our belief is that the only reasonable construction according to the specification and the need to secure the file is that the file has to be hidden. I see I'm into my rebuttal time, so if there are no other questions. Yeah, there's one more question, or actually two questions. Why does it matter to you whether this case is treated as a CBM or presumably in some other of the IPR category if they're going to challenge it? What's the big issue here? So why does it matter that we were CBM as opposed to IPR? Yeah. Since they're both filed there. I mean, certainly they could have filed an IPR in this case. They didn't. That was available to them. They filed a CBM here because they were challenging the patent on 101 and 112 grounds. Those were denied. I think the CBM aspect is important because I think that we do need guidance as litigants and the PTAB needs guidance to get some uniformity in the decisions. I have a question, and I hope our presiding judge will give you a little slack on this. I look at the patent. We're talking about the 191 patent at this point? Yes. Have I missed you? No, no, no. I'm sorry. I was grabbing the patent. And the 191 patent says that the field of the invention relates generally to computer security and more particularly to systems and methods for authenticating a web page. Yes. Nothing financial as such in that other than the implicit that, and when we get all this done, we want to make money. But that's in every patent. Okay. So clearly that can't make it a CBM. Then if you look at the summary of the invention and exemplary embodiments of the invention, a user requests a web page, et cetera, et cetera, et cetera, all that's right in it. You have to go all the way back to column 11, almost down to line, I guess it's line 50 or so, before you really get any discussion of something that sounds like financial activity. Any merchant computer and bank computer are interconnected via a second network referred to as a payment network. The payment network represents existing proprietary networks That sounds like it's left over from a prior patent that really has very little to do with the claims. This is a continuation patent, isn't it? It is a continuation, yes. So that sounds a little bit like it was left over, which is okay. You can do that. But it doesn't sound like what's claimed here has anything to do with those paragraphs. And that's the only place in that whole written description where there's any real sense of a financial activity. Right, we would agree with that. We would agree with that. We would agree with that. Okay. Judge Plager has just spent time arguing for you, but we won't take that out of your time. I appreciate that. We'll give you about three minutes of rebuttal back. Mr. Landhier. May it please the Court. Let me begin by addressing your last question, Judge Plager. It's not the case that in this patent you need to travel all the way to column 11 before you find that this is an invention,  in a financial product or service. In the background of the invention section, the only website that's described is a hypothetical website called www.bigbank.com. When you get to column 6 of the patent, there is a reference to the particular usefulness of the claimed invention in conducting online commerce transactions. And then, as you referred to, Your Honor, column 11 of the patent, there is a lengthy description of the use of the claimed invention, specifically by banks and other financial institutions, to engage in finance-related activity. In fact, the only real-world examples given of what the claimed invention is useful for in this patent are directly for the administration, practice, and management of financial products and services. What the PTAB has done to evaluate, there was a question earlier about what is the standard that the PTAB has applied and what did it apply in this case. The analysis is at appendix pages 7 to 12. The PTAB properly sets forth that it must analyze the claims and determine whether the claimed invention is to a method or corresponding apparatus for data processing or other operations used in the practice, administration, or management of a financial product or service. That's just the statute? That is the statute. It then goes on to make findings about what is disclosed and claimed in the patent, which are entitled to substantial evidence, standard of review, about the particular usefulness that the patent describes of the claimed invention in the context of financial services. Where does this question of particular usefulness come from? It seems to me, again, it goes back to something I asked about before. We have already taken the step of saying it doesn't matter whether you're a seller or a financial institution in the ordinary pedestrian sense. So we've already vastly expanded this statute. So now the question is, whatever the patent is, the general question, is this a patent particularly useful in selling stuff? The answer must be yes for 99% of all patents. Is that what Congress was bringing under the CBM regime? Your Honor, I think that the answer is no. It doesn't pertain to 99% of patents. Why not? Because the statute requires that to be a CBM patent, it needs to be a patent that covers a method or corresponding apparatus for data processing or other operations. Okay, a method or apparatus for any operations, okay, that's pretty darn broad, yeah. Used in the practice administration or management. And virtually everything invented is used in some selling. Your Honor, that might be the case in some sense, but that's not how the statute has been applied by the PTAB, and it's not what is necessary for the court to rule on this case. Tell me if my understanding of the following two things is right. My understanding is every single one of the cases where we have upheld CBM, the claim language refers to selling or some other commercial activity. The claim language. I don't believe that's right, Your Honor. What doesn't? In Blue Calypso, there were two patents. Some of the patents in Blue Calypso referred to a subsidy, and the subsidy had been construed specifically. Okay, so that's one. That was three of the patents at issue. Two of the patents at issue referred to an incentive, which was not specifically construed to require something particularly financial or not. And the specification or the written description in that patent gave examples of incentives that were non-financial. At footnote two of Blue Calypso, this court looked at those patents and said in the final sentence of that footnote that the written description confirmed that most, if not all, of the examples of an incentive given in the specification related to a financial service. And that was good enough in that case for those patents to fall within the scope of covered business method review. Okay, well, let me – and that's the only arguable example where we could argue about what incentive has and it must have some sort of value. Everything else, there's actual claim language specifically about a selling or some other kind of transfer of value. In the three cases that this court has had on the issue, yes. Right, and is my understanding also right that the set of PTAB decisions, none of them I think precedential, is kind of a mixed bag where some PTAB panels say this can't possibly be covered, it's not really about commercial dealings? No, that's not correct either. I am remembering some cases somebody has described. What about those cases? The conclusions that the PTAB has reached as to a particular patent, some patents it has found to be eligible, other patents it has found not to be eligible. The methodology in all of the decisions that are cited by appellant is consistent, and the PTAB has looked at a set of factors to determine whether the claimed invention is used in the administration practice or management of a financial product or service. Everything is used in the practice of selling. First, Your Honor, you don't need to find that extreme position to answer the question. I don't understand how your position makes sense if the natural logic is as absurd as that. That's my problem. And that's not the logic and that's not how the PTAB has been applying it, Your Honor. And we'll take the AT&T case that was cited by secured access in its argument and its reply brief. In that case, the board applied the same methodology that the board applied in this case, but it reached a different conclusion. And the reason was that when it looked at the claims and it looked at the written description… What do you mean by the same methodology? The methodology is that you need to look at the claims. What is the claimed invention? This is not a word search for a particular word that limits the claims only to a financial product or service. That would be diametrically opposed to what Congress was intended to do with this statute. You look at the claims. What is the claimed invention? Next, look to the written description. What embodiments are described? Is there something in the written description that describes this particular claimed invention as being useful in the financial services context? If the answer is yes, the board says that weighs in favor of finding that it's a financial product or service. Next, are there other things that weigh in favor of finding it to be either a financial product or service or not a financial product or service? One of those factors might be, have you sued 50 banks and nobody else for infringing these claims? If that's the case, that weighs in favor of finding that the patented claims are used in a financial product or service. Is it enough if it's incidental to a financial service? That's not what the board found was the case here. The board found that it was actually used. The claims were actually used. That's in Appendix 10. But the PTO has expressed its view that incidental to a financial product or service would be sufficient. And the board in the alternative found that it was also incidental. But that issue doesn't need to be raised. It doesn't need to be decided here because here the only practical uses of the invention, the only uses in real life described in the patent itself are for online banking. And think about what this invention is useful for. The claims here are not useful for the vast, vast majority of websites. You don't use this because you're going to WashingtonPost.com to read the news. Our law firm website wouldn't use this technology. But there's nothing in the patent that says that, is there? There is because what the patent says, and this is what the board found. In Appendix pages 7 through 10, the board found that the patent describes a particular need when somebody is going to be sharing sensitive information on a website for that person to feel comfortable. This is about the issue that if somebody is going to enter their login and password for their bank account, if they're going to enter their credit card information, they need to feel like they are giving that information to the correct website, not to a fraudster. ...to put in their social security number in order to buy something. I think if it's in the context of performing online commerce, if it is the sharing of that information for the purpose of moving money from one party to another party, that is very clearly a financial product or service. That is at the heart of what financial services is. How about if it's to put in a social security number in order to obtain a license? I think, again, if that had to do with the movement of money, it likely would be a financial service. However, it's important to remember... When would I go online other than talk to my friends? That does not involve moving money from one place to another. Your Honor, I think the majority of times that you go online does not involve that. If you're going to access information about a store, about a restaurant, if you're going to read the news, if you're going to go online to see what time movies are playing, all of that has nothing whatsoever to do with this invention. The claims here have particular use in the context of websites that require you to exchange very secure information. One key example of that... The interesting phrase, have particular use, what does that mean? That that is one particular use? Yes, Your Honor. You mean more than that, because that can't be enough. You mean predominant use or what? In this case, we're in a category of patent where the only use described in the specification and the only accused use is specifically in financial services. So we don't need to get to that issue. Does filing a CBM require a lawsuit to have been brought or no? It does, Your Honor. It does, and so suppose there's one lawsuit brought and that defendant files a CBM. And that happens, say, to be against the party that filed the DJ action against them. Would that be a CBM when they go to the board? Standing alone, Your Honor, one single fact like that, I do not believe, would be found to be significant enough. And we have examples from the PTAB where the PTAB has said that particular fact was not significant enough in and of itself to cause this to be a CBM patent. That, in fact, is my client, PNC, in the PNC v. IB CBM petition that's cited by Appellant in their brief. The board said that wasn't enough in that case. But here the board is engaged in a weighing of a number of factors. This court is to review that weighing under an arbitrary and capricious standard, giving substantial evidence review to the facts found by the board. That's true if they use the right definition for what is a CBM, isn't it? That is true, Your Honor. And make no mistake, what is being argued by Secure Access is that the claims need to be limited to a particular financial product or service. They're saying there needs to be a claim limitation that limits this to or ties it to a financial product or service. They're arguing that the claim has to say financial. That's what they're arguing, Your Honor, yes, that there needs to be some money word in the claim that you have to be able to spot, encircle, and say that specifically limits this to a financial transaction, whether that be sales. Right. The statute talks about operations used in a financial product. That's correct. It's broader, Your Honor. Like electricity. Your Honor, no, not like electricity. Why not? Well, first, because if there was some invention that covered electricity, it would likely be a technological invention that would be specifically part of it. We don't get to that yet. But you think that the threshold determination would actually cover electricity and glass and desks and HVAC systems and paper and pencils and everything in computers which are used overwhelmingly in the world in businesses? No, Your Honor. This is all going to be in CBM unless they fall out under the technology exception. No, absolutely not, Your Honor. And, again, that's not how the Board applies the statute, and that's not how it was applied here. There are a number of factors to look to. In your electricity example, if the patent is about some improvement to electricity that has to do with data processing, has no particular connection or utility specific to financial products or services, the Board has on many occasions found that that does not meet the financial product or services requirement. Well, let me ask you this question. Could your invention be used by me if I want to, or by the company, if I want to go online to my electric company and ask them what was my usage last April? And they say to me, you have to identify yourself with your social security number, which I'm concerned about security, so we use your system. Can it be used in that way? I think it could be used in that way. Would it have specific utility in that? Is the patent described as being useful for that particular application? No. There's no financial transaction involved in that, whatever. If you're not using it, I assume you're using the website because you want to determine whether you've built correctly or not. No, I want to find out how I'm turning off my lights at night. So I want to know what my usage is. And if the invention was used in that context, that would not bar it from being a CBM eligible patent, just because it has uses outside of the financial products and services? Well, see, that really gets at the question I'm wondering about. If the invention can be used both in and out of financial services, does that make it a CBM or keep it from being a CBM, or it has nothing to do with it? It has something to do with it, but it is not a binary issue. If the invention has general utility, that is a factor that should be weighed in determining whether it is a covered business method patent, and that's exactly what the board did in this case and has done in other cases. It is not a dispositive issue, and that has to be the answer.  It doesn't say solely used or exclusively used in a financial product or service. And second, it's very clear from the legislative history that that was the intent of Congress, that it not be the case that only uses by financial institutions or in that context would be permissible for covered business method review. Thank you, counsel. We have your argument. Mr. Wright has some rebuttal time. We'll give you three minutes. Thank you, Your Honor. I'd like to address just a few things. First of all, counsel, I want to dispute one issue. Counsel said that it was our position that the claim language had to state financial or some sort of financial term within the claim language. That was in the response brief. We addressed that in our gray brief and said, no, that's not at all what we're claiming. Our primary point here, the procedural point, was that there does have to be some reference to the claim language, though, and the board here didn't even cite our claim language when it went through its analysis and determined that the 191 patent was a CBM patent. He said that all of the cases that we cite apply the same methodology, and they don't, as we also pointed out in our briefing. Every one of those cases where we cited to the PTAB's decision on CBM, the PTAB cited specific language within the claim to determine that there was some link to a financial product or service. It wasn't necessarily a term that said sale or price or anything, but they at least went through and did the analysis and said there's a link in the claim that ties this to a financial product or service. We've still not heard any allegation of a term in our claim that links this to a financial product or service. The closest we've heard was, Judge Laurie, your questions at the beginning of my arguments before asking about data processing and things of that nature, which, of course, we respectfully suggest refer to the security aspect of this and not to the financial product or service. The AT&T Board held that general utility patents were not CBM patents. There's a statement directly from that decision that said, lastly, statements in the specification that a claimed invention has particular utility in financial applications may weigh in favor of determining the patent is eligible for a covered business method patent review. However, we do not find covered business method patent review available for patents that claim generally useful technologies that also happen to be useful to financial applications. You asked about other websites that might use this, and the statement was made earlier that the only potential utility for this is in the financial industry. I would suggest that social media sites would be good candidates for this. The more particular statement that was made was that financial uses are the only, I think the language was concrete ones, called out in the spec. Is that true? They are the only concrete ones called out in the spec, but I still think that those are examples of how this might be used, and I think that this patent is still a general utility patent that is not tied necessarily to the financial services industry. I see my time's up. If there are no other questions. Thank you, Mr. Wright. We'll take this case under advisement.